# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  Timothy C. Stanceu, Judge

| | |
|---|---|
| KUMAR INDUSTRIES,<br><br>       Plaintiff,<br><br>       v.<br><br>THE UNITED STATES,<br><br>       Defendant. | Court No. 21-00622<br><br>**PUBLIC VERSION** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, N.W.
Suite 500
Washington, DC  20006
Tel: (202) 794-1182
Email: llevinson@foxrothschild.com

*Counsel for Plaintiff Kumar Industries*

July 28, 2022

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| TABLE OF CONTENTS | | i |
| TABLE OF AUTHORITIES | | ii-iv |
| I. | STATEMENTS PURSUANT TO RULE 56.2(c)(2) | 1 |
| | A.  The Administrative Determination Sought To Be Reviewed | 1 |
| | B.  Statement of the Issues | 2 |
| II. | STATEMENT OF FACTS | 2 |
| III. | SUMMARY OF ARGUMENT | 4 |
| IV. | STANDARD OF REVIEW | 5 |
| V. | ARGUMENT | 6 |
| | A.  The Application of Total Adverse Facts Available With Inference Is Unsupported by Substantial Evidence on the Record and Otherwise Not in Accordance With Law | 6 |
| |     1.  The Legal Standard for Application of AFA | 6 |
| |     2.  Kumar Has Cooperated to The Best of Its Ability | 9 |
| |     3.  Sufficient Data Exists on the Record to Calculate the Antidumping Duties | 13 |
| VI. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

### FEDERAL STATUTES

| | |
|---|---|
| 19 U.S.C. § 1516a(b)(1)(B) | 5 |
| 19 U.S.C. § 1677(33)(A)-(G) | 3 |
| 19 U.S.C. § 1677e(a) | 6, 7 |
| 19 U.S.C. § 1677e(a)(2) | 6 |
| 19 U.S.C. § 1677e(b) | 7 |
| 19 U.S.C. § 1677m(d) | 6, 7 |
| 19 U.S.C. § 1677m(e) | 6, 7 |

### FEDERAL REGULATIONS

| | |
|---|---|
| 19 U.S.C. § 351.102(b)(3) | 10 |

### FEDERAL CASES

*Allegheny Ludlum Corp. v. United States,*
   215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ... 8

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ... 5

*BlueScope Steel Ltd. v. United States*,
   548 F. Supp. 3d 1351 (2021) ... 6, 7, 8

*Borden, Inc. v. United States,*
   4 F. Supp. 2d 1221 (Ct. Int'l Trade, 1998) ... 12

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962) ... 4

*Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States,*
   701 F.3d 1367 (Fed. Cir. 2012) ... 12

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ... 5

*Chia Far Indus. Factory Co., Ltd. v. United States,*
   343 F. Supp. 2d 1344 (Ct. Int'l Trade, 2004) ... 8

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1951) ... 4

*De Mexico v. United States,*
   753 F.3d 1227 (Fed. Cir. 2014) ... 12

## **FEDERAL CASES CONT'D**

*Ferro Union, Inc. v. United States,*
   44 F. Supp. 2d 1310 (Ct. Int'l Trade 1999) ........................................................... 7

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,*
   216 F.3d 1027 (Fed. Cir. 2000) .............................................................................. 8

*Fujitsu General. Ltd. v. United States*,
   88 F.3d 1034, 1038 (Fed. Cir. 1996) ..................................................................... 5

*Gerber Food (Yunnan) Co., Ltd. v. United States,*
   387 F.Supp.2d 12700 (Ct. Int'l Trade 2005) ......................................................... 6

*Guizhou Tyre Co. v. United States,*
   43 CIT ___, ___, Slip Op. 19-59 (Ct. Int'l Trade 2019) ....................................... 7

*Jindal Poly Films v. United States,*
   365 F. Supp. 3d 1379, ___ (Ct. Int'l Trade 2019) ................................................ 7

*Koyo Seiko Co. v. United States,*
   20 F.3d. 1160 (Fed. Cir. 1994) ............................................................................... 6

*Mannesmannrohren-Werke AG v. United States,*
   77 F. Supp. 2d 1302 (Ct. Int'l Trade 1999) ......................................................... 13

*Metallverken Nederland B.V. v. United States,*
   728 F. Supp. 730 (Ct. Int'l Trade 1989) ............................................................... 5

*Myland Industrial, Ltd. v. United States,*
   Slip Op. 07-154, (Ct. Int'l Trade Oct. 25, 2007) ................................................ 13

*Nat'l Nail Corp. v. United States,*
   Slip Op. 19-71 (Ct. Int'l Trade June 12, 2019) ..................................................... 8

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ........................................................................ 7, 12

*Nippon Steel Corp. v. United States,*
   118 F. Supp. 2d 1366 (Ct. Int'l Trade 2000) ........................................................ 8

*Nucor Corp. v. United States,*
   594 F. Supp. 3d 1320 (Ct. Int'l Trade 2008) ........................................................ 5

*PAM, S.p.A. v. United States,*
   582 F.3d 1336 (Fed. Cir. 2009) ............................................................................. 5

*Timken U.S. Corp. v. United States,*
   434 F.3d 1345 (Fed. Cir. 2006) ........................................................................... 12

*Zenith Radio Corp. v. United States,*
   437 U.S. 443 (1978) ............................................................................................... 6

## ADMINISTRATIVE DECISIONS

*Glycine from India:*
    86 Fed. Reg. 62508 (November 10, 2021) ............................................................ 1

*Glycine from India:*
    87 Fed. Reg. 40507 (July 7, 2022) ...................................................................... 3

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KUMAR INDUSTRIES,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Court No. 21-00622 |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S
56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

On behalf of Plaintiff Kumar Industries ("Kumar"), a foreign producer and exporter of glycine manufactured in India, we respectfully submit the following memorandum in support of the company's 56.2 motion for judgment on the agency record in this action. For the reasons stated below, Commerce's decision to replace all of Kumar's data with facts available and then apply adverse inferences to those facts is unsupported by substantial evidence.

I.      STATEMENTS PURSUANT TO RULE 56.2(c)(2)

    A.      The Administrative Determination Sought To Be Reviewed

Kumar hereby contests the final results of the first administrative review of the antidumping order on glycine from India issued by the International Trade Administration of the U.S. Department of Commerce ("Commerce") and published in the Federal Register on November 10, 2021. *See Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018-2020,* 86 Fed. Reg. 62508 (November 10, 2021). Public Record Document ("PR") 201; Appendix Tab 1. This administrative review covered the period from October 31, 2018 to

1

May 31, 2020 ("POR"). The findings and conclusions of the contested determination were set forth in an accompanying Issues and Decision Memorandum for the Final Results, dated November 4, 2021 ("Final I&D Memo"); PR 200; Appendix Tab 2. Based on its determination to impose total adverse facts available ("AFA"), Commerce assigned Kumar an antidumping duty rate of 13.61%.

### B. Statement of the Issue

Whether Commerce's determination to assign Kumar a rate based on total AFA on the grounds that Kumar allegedly withheld information that prevented Commerce from determining whether Company A or Company B was affiliated with Kumar, was unsupported by substantial evidence on the record and otherwise contrary to law.

## II. STATEMENT OF FACTS

The issue in this appeal concerns Commerce's application of total adverse facts available ("AFA") as to Kumar on the basis of its withholding information that prevented Commerce from determining whether Company A or Company B was affiliated with Kumar. During the POR, Company A accounted for a substantial portion of Kumar's home market sales and Company B accounted for a substantial portion of Kumar's purchases of inputs necessary to produce glycine.

Prior to both the initial investigation and the first administrative review of the antidumping duty order, partners of Kumar had once been the owners of Company A and Company B, but sold their interest in these companies and no longer retained any interest or control over their former business operations. Thus, Kumar asserted that no affiliation between Kumar and Company A or Company B existed due to common ownership during the POR.

In Kumar's Section A Response, consistent with Commerce's determinations in the initial investigation, Kumar did not include either Company A or Company B among Kumar's reported affiliates.  Kumar Section A Response at Exhibit A-3; Confidential Record ("CR") 9-14.  Appendix Tab 3  Consequently, Kumar's Sections B response reported its POR sales made to Company A as home market sales made to an unaffiliated customer.  Kumar Section B Response at 2; CR 73-80; Appendix Tab 4.  Similarly, Kumar's Section D response reported its POR purchases of major inputs from Company B as purchases from an unaffiliated supplier.  Kumar Second Supplemental Response at 6; CR 97-99; Appendix Tab 5.

In response to the second, third and fourth supplemental questionnaires, Kumar provided additional information to Commerce that established that during the POR Companies A and B were not affiliated with Kumar within the meaning of 19 U.S.C. § 1677(33)(A)-(G).

At no point in the review did Commerce specifically request that Kumar report Company A's resales of its purchases from Kumar as home market sales in the Section B  Response.  At no point in the review did Commerce specifically request that Kumar report Company B's own input purchases of its sales to Kumar in the Section D response.

Commerce published the preliminary results in the Federal Register on July 7, 2021.  *See Glycine from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2020*, (July 7, 2021) ("Preliminary Results"); PR 177; Appendix Tab 6.  In the preliminary results, Commerce applied total AFA as to Kumar.  Commerce's preliminary determination, however, was the first time that Kumar was made aware that Commerce intended to consider whether either Company A or Company B as affiliated with Kumar.  Commerce justified the application of facts available because Kumar "failed to submit documents clearly explaining its affiliation status with respect to { Companies A and B}".  Preliminary Decision Memo at page 7;

PR 2; Appendix Tab 2. Moreover, Commerce justified its use of an adverse inference in the application of facts available on the same basis as it set forth for the application of facts available. *Id*. at 7.

On August 16, 2021, Kumar submitted a case brief that objected to Commerce's application of total AFA in the preliminary results. Kumar Case Brief; CR 216: Appendix Tab 7. On November 10, 2021 Commerce published the final results in the Federal Register. *Glycine from India*, *supra*; Appendix Tab 1. In the final results, Commerce continued to determine that use of total AFA as to Kumar was warranted. I&D Memo, *supra* at 28-32; Appendix Tab 2.

### III. SUMMARY OF THE ARGUMENT

For the reasons set forth below, the record evidence does not support Commerce's application of total adverse facts available. Kumar cooperated in all facets of the review, and responded in full to the initial questionnaire and four supplemental questionnaires. Commerce's conclusion that Kumar's lack of cooperation impeded the agency's ability to calculate an accurate dumping margin for Kumar is not unsupported by substantial evidence on the record. In fact, Kumar provided all information requested in the form and manner requested in the initial questionnaire response[1] and four supplemental questionnaires responses.[2] The vast majority of all information submitted by Kumar was complete, accurate, and timely. Kumar accurately provided extensive information regarding its affiliation status with Company A and B at every occasion in the form and manner requested by Commerce. Commerce has failed to identify any gaps or other

---

[1] *See* Kumar Section A Questionnaire Response, *supra*; Appendix Tab 3; Kumar Section B Response, *supra*; Appendix Tab 4 of Section B & C Questionnaire Response," dated November 12, 2020; and "Kumar Industries Section D Questionnaire Response, *supra*; Appendix Tab 5.

[2] *See* Kumar First Supplemental Questionnaire Response; CR 102 and 103; Appendix Tab 8; Kumar Second Supplemental Response; CR 121-138; Appendix Tab 9; Kumar Third Supplemental Response; CR 151-166; Appendix Tab 10; and Kumar Fourth Supplemental Response; CR 188 and 189; Appendix Tab 11.

deficiencies in the record that would have prevented the agency from calculating the appropriate antidumping duties applicable to Kumar.

## IV.    STANDARD OF REVIEW

When reviewing the final determination of an antidumping duty investigation, the Court must sustain Commerce's final results unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). *See also Fujitsu General. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996).

Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States,* 582 F.3d 1336, 1339 (Fed. Cir. 2009), *quoting Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1951). In order for a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 158 (1962); *Nucor Corp. v. United States,* 594 F. Supp. 3d 1320, 1331-32 (CIT 2008). The Court is not to reweigh the evidence or substitute its judgment for that of Commerce. *See Metallverken Nederland B.V. v. United States,* 728 F. Supp. 730, 734 (CIT 1989). Judicial review of agency action must be based on the record as a whole, and the Court must take into account "whatever in the record fairly detracts from its weight." *Atl. Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed. Cir. 1984).

In reviewing Commerce's interpretation of the statute, the first question is whether the statutory language is clear and unambiguous as to the precise question at issue. If so, that is the end of the matter as the clear intent of Congress must be applied. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984). If, however, the statute is silent or ambiguous with respect to the specific issue, "the question for the court is whether the agency's

answer is based on a permissible construction of the statute." *Id.* at 843. The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. *See Zenith Radio Corp. v. United States,* 437 U.S. 443, 450 (1978). The court must defer to Commerce's reasonable interpretation of a statute even if it might have adopted another interpretation if the question had first arisen in a judicial proceeding. *Id.* Thus, the Court will uphold such statutory interpretations by Commerce if they are reasonable. *See Koyo Seiko Co. v. United States,* 20 F.3d 1160 (Fed. Cir. 1994).

IV. **ARGUMENT**

   A. **The Application of Total Adverse Available With Adverse Inferences Is Unsupported by Substantial Evidence on the Record and Otherwise Not in Accordance With Law.**

      1. **The Legal Standard for Application of AFA**

Commerce is authorized to invoke "facts otherwise available" when "necessary information is not available on the record," or when a party: (1) withholds requested information; (2) fails to provide information by established deadlines or in the form or manner requested; (3) significantly impedes the review; or (4) provides information that cannot be verified. 19 U.S.C. § 1677e(a)(2); *see also Gerber Food (Yunnan) Co., Ltd. v. United States,* 387 F. Supp. 2d 1270, 1280 (Ct. Int'l Trade 2005). If Commerce finds that a party meets any of these four conditions, then Commerce is authorized to use facts otherwise available, subject to 19 U.S.C. § 1677m(d), to reach the applicable determination. 19 U.S.C. § 1677e(a).

As this Court recognized recently:

> The focus of subsection a is respondent's *failure to provide information*. The reason for the failure is of no moment. Thus, generally only after Commerce has determined that there is information, missing, creating a gap in the record, can it apply an adverse inference when selecting among the facts otherwise available.

6

*See BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351,1358 (2021). Even if Commerce rightfully finds that respondent failed to provide necessary information, it must comply with 19 U.S.C. § 1677m(d), " which requires [Commerce] to provide a respondent with notice of deficient responses, and an opportunity to remediate, before deciding to rely on facts available. *Id*. The statute further requires that Commerce use information that has been submitted on a timely basis and that is "not so incomplete that it cannot serve as a reliable basis for reaching the application determination." 19 U.S.C. § 1677m(e). As this Court stated in *Jindal Poly Films v. United States*, 365 F. Supp. 3d 1379, 1386 (Ct. Int'l Trade 2019):

> Commerce may not decline to consider information that is necessary to the determination but does not meet all the applicable requirements when the information is timely submitted; the information can be verified; the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination.

Application of the adverse facts available statute is thus a two-step process. Commerce is not permitted to automatically resort to adverse inferences. *See Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003). Only after Commerce determines that it may resort to facts available under 19 U.S.C. § 1677e(a) for certain information, may it consider whether to draw an adverse inference with respect to that information. Commerce must therefore make a separate and additional finding that a party "failed to cooperate by not acting to the best of its ability to comply with a request for information " before drawing adverse inferences. 19 U.S.C. § 1677e(b); *see also Ferro Union, Inc. v. United States,* 44 F. Supp. 2d 1310, 1329 (Ct. Int'l Trade 1999). "The focus of subsection (b) is respondent's failure to cooperate to the best of its ability, not its failure to provide requested information." *See BlueScope Steel Ltd. v. United States, supra* at 1358; *see also Guizhou Tyre Co. v. United States*, 43 CIT \_\_\_, \_\_\_, Slip

Op. 19-59 at 7 (May 15, 2019); *Nat'l Nail Corp. v. United States*, 43 CIT ___, ___, Slip Op. 19-71 at 13 (June 12, 2019).

To be supported by substantial evidence, Commerce has an obligation to clearly articulate how it reached the conclusion that a party has failed to act to the best of its ability. *See Allegheny Ludlum Corp. v. United States,* 215 F. Supp. 2d 1322, 1341 (Ct. Int'l Trade 2000). The focus of the statute is "respondent's failure to cooperate to the best of its ability; not its failure to provide requested information." *BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351, 1358 (Ct. Int'l Trade 2021). This standard implies the respondent's unwillingness to comply or reckless disregard of compliance standards. *Nippon Steel Corp. v. United States,* 118 F. Supp. 2d 1366, 1379 (Ct. Int'l Trade 2000) (Commerce must analyze the allegedly deficient response in light of the respondent's "overall conduct, the importance of the information, the particular time pressures of the investigation, and any other information that bears on the issue of whether the deficiency was an excusable inadvertence or a demonstration of a lack of disregard for its responsibilities in the investigation").

Even where Commerce properly finds the respondent failed to act to the best of its ability and that therefore an adverse inference can be drawn, Commerce has a continuing obligation to balance the statutory objective of finding an accurate dumping margin with the goal of inducing compliance. *See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000); *Chia Far Indus. Factory Co., Ltd. v. United States,* 343 F. Supp. 2d 1344, 1366 (Ct. Int'l Trade, 2004). Commerce's discretion is not unbounded and it must consider whether the assigned AFA rate creates an overly punitive result. As stated in *BlueScope Steel*, *supra*, "[a]t all times, the overriding purpose of the statute

is to determine an accurate antidumping margin for respondent when one is warranted." *Id*. at 1358.

### 2. Kumar Has Cooperated to The Best of Its Ability

In its Final Results, Commerce applied total AFA on the grounds that Kumar did not cooperate to the best of its ability in providing information concerning its affiliation status. Final I&D Memo at Page 28; PR 2; Appendix Tab 2. Commerce claims wrongly that Kumar's lack of cooperation impeded the agency's ability to calculate an accurate dumping margin for Kumar. *Id.* In fact, Kumar provided all information requested in the form and manner requested in the initial questionnaire response[3] and four supplemental questionnaires responses.[4] The vast majority of all information submitted by Kumar was complete, accurate, and timely.

Kumar accurately provided extensive information regarding its affiliation status with Company A and B at every occasion in the form and manner requested by Commerce. Commerce never identified any specific document or other information that was missing from the record but stated broadly that "Kumar withdrew from its earlier responses the information repeatedly requested—whether Kumar is affiliated with Companies A and B." A review of the record shows that Kumar responded unequivocally and consistently throughout the proceeding that Kumar was not affiliated with Companies A and B. There is no ambiguity with respect to this point. Commerce never enumerated the supporting documents which were allegedly not submitted by

---

[3] *See* Kumar Section A Questionnaire Response, *supra*; Appendix Tab 3; Kumar Section B Response, *supra*; Appendix Tab 4;  of Section B & C Questionnaire Response," dated November 12, 2020; and "Kumar Industries Section D Questionnaire Response, *supra*; Appendix Tab 5.

[4] *See* Kumar First Supplemental Questionnaire Response; CR 102 and 103; Appendix Tab 8; Kumar Second Supplemental Response; CR 121-138; Appendix Tab 9;  Kumar Third Supplemental Response; CR 151-166; Appendix Tab 10; and Kumar Fourth Supplemental Response; CR 188 and 189; Appendix Tab 11..

Kumar in its responses nor highlighted any instance where Kumar declined to furnish any required information in the form and manner required by Commerce.

As reviewed above, Kumar first reported information regarding its affiliates in its Section A Response. *See* Kumar Section A response at Exhibit A-3; *supra*. at Appendix Tab 3. At the outset, in accordance with 19 CFR § 351.102 (b) (3) and based on the definition provided in the Glossary of terms at Appendix-1 of the initial questionnaire, Kumar did not report that Company A and B were its affiliates. *Id*. In its second supplemental questionnaire, Commerce subsequently asked Kumar to "{p}lease explain with supporting documents whether company A and B are affiliated with Kumar or supplied inputs to Kumar for its' production of glycine." Commerce's 2nd Supplemental Questionnaire; PR 117; Appendix Tab 12.

In response, Kumar provided extensive explanation along with supporting documents concerning its lack of affiliation with Companies A and B. Company A, which had previously been owned by the partners of Kumar [               ], was sold before the beginning of the period or review. Company B had been jointly owned by two families *i.e.*, [               ] until the year 2013. Kumar's Second Supplemental Response, *supra*. The [          ] withdrew its ownership from Company B in May 2013. To support these facts, Kumar provided a copy of the master information of directors of the company. *Id*. at Exhibit A-20. Kumar also provided a copy of certain retirement deeds showing that the members of [          ] sold their shares of Companies A and B before the period of review. *Id*. at Exhibits A-18 and A-19.

In its third supplemental questionnaire, Commerce further inquired about the affiliation. Commerce asked that if any of Kumar's partners received income from either Company A or B and requested Kumar to describe the nature of such income from these companies. Commerce's

3rd Questionnaire; CR 146; Appendix Tab 13. In response, Kumar reiterated that none of Kumar's partners had received any income from Company A or B. Kumar also provided the tax returns of Kumar's partner who had previously owned shares of Company A and B. Kumar's 3rd Supplemental Response, *supra* at Pages 1-2 and Exhibit 21.1. The tax returns showed that Kumar's partner had indeed received income from Companies A and B as a partner of these two companies. Final I&D Memo, *supra* at 29; Appendix Tab 2.

Kumar acknowledges that the tax returns created uncertainty with regard to whether the Kumar partner had fully retired from the partnership of Companies A and B. For this reason, in response to the fourth supplemental questionnaire, Kumar clarified that revenue received was in fact [                                    ] of Companies A and B, and not business income derived from operations which might suggest affiliation. Kumar submitted the income tax returns of the main partner of Kumar [                        ] to demonstrate that he generated no income from business and profession (i.e., share in profits or salary or other business interests) from any company other than [                                                      ].[5] Kumar 4th Supplemental Questionnaire Response, *supra* at Exhibit A-28: Appendix Tab 11. With the clarification contained in the fourth supplemental questionnaire concerning revenue received from Companies A and B by Kumar's partner, Kumar reiterated its position that is partner had not received any [            ] from Company A or B (although it had received interest income). *Id*. at page 3. The corrected computations were

---

[5] In its response to the fourth supplemental questionnaire, Kumar explained further that the tax consultant for its partner had erroneously classified interest income that was received by Kumar's partner from Company B "as income from operation of the partnership in its draft income tax computation for the years 2019-2022 and 2020-2021." Kumar 4th Supplemental Questionnaire Response, *supra* at Exhibit A-28: This error was subsequently corrected to show that the revenue received was interest on loans and payment for the transfer of shares from Company A and B, not income from operations. The revenue received was therefore was not related to the business operations or profits of either company.

submitted to substantiate the non-affiliation between Kumar, Company A and B. *Id.* at Exhibit A-28.

There is not even a scintilla of evidence that Kumar withheld or otherwise failed to provide any information in the form and manner requested by Commerce. In the landmark case of *Nippon v. United States*, the Federal Circuit held that the standard is determined by "assessing whether [the] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). In other words, a party fails to cooperate to the best of its ability when it fails "to do the maximum it is able to do" to provide Commerce with full and complete answers to all inquiries in an investigation. *Id.* In the present case, Kumar's efforts to extend maximum cooperation can be easily gathered from its detailed submissions from initial questionnaire response to four supplemental questionnaire responses. Kumar sufficiently explained all the inquiries of Commerce regarding its affiliation status with Company A and B.

In assessing whether the "best of ability" criteria had been met, Commerce must take into account "the nature of mistake," *Timken U.S. Corp. v. U.S.*, 434 F.3d 1345 (Fed. Cir. 2006), and carry out a case-specific analysis for applying adverse inference, a tool which should be wielded primarily for its deterrent effect. *De Mexico v. United States*, 753 F.3d 1227 (Fed. Cir. 2014), *also see Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1379 (Fed. Cir. 2012). Commerce must therefore fully consider the circumstances surrounding a respondent's non-cooperation before it decides to draw an adverse inference. The resort to adverse inferences is not automatic. *Borden, Inc. v. United States*, 4 F. Supp. 2d 1221 (Ct. Int'l Trade 1998). Stated otherwise, an adverse inference is not to be "drawn merely from a failure to respond." An adverse inference is only appropriate in circumstances in which it is reasonable for Commerce to have

12

expected that more forthcoming responses should have been made. *Myland Industrial, Ltd. v. United States*, Slip Op. 07 - 154, (Ct. Int'l Trade Oct. 25, 2007). The mere fact that a respondent cannot obtain the requested information, or that the respondent did not properly answer a question, does not automatically constitute substantial evidence of failure to cooperate to the best of its ability. *Mannesmannrohren-Werke AG v. United States*, 77 F. Supp. 2d 1302, 1316 (Ct. Int'l Trade 1999)

Kumar never waivered from its firm representation that it was not affiliated with Companies A and B. Yet, Commerce arbitrarily and capriciously found that because "Kumar has not been forthcoming in responding to our questions, its responses call into question" the accuracy and reliability of all information submitted on the record, including the copious numerical data that should have been used to calculate the antidumping duties. Final Issues & Decision Memo at page 29, *supra*; Appendix Tab 2. Once again, Commerce does not identify where or how Kumar failed to cooperate to the best of its ability in response to its multiple requests for information concerning Kumar's affiliation status with Company A and B within the meaning of section 776(b) of the Act.

### 3. Sufficient Data Exists on the Record to Calculate the Antidumping Duties

Commerce claims that it did not have sufficient factual information on the record of this administrative review to calculate a margin for Kumar for the final results of this review.[6] Final Issues & Decision Memo at page 32, *supra;* Appendix Tab 2. *Id*. Yet, Kumar reported all of its U.S. sales, home market sales and all cost data necessary to calculate the antidumping margin. In addition, Kumar provided explanations regarding all major elements required to accurately report

13

the cost of production of glycine. There were no gaps in the record or lack of information that Commerce required in order to calculate the antidumping duty margin. Stated otherwise, there is nothing that would have impeded Commerce's ability to calculate an accurate dumping margin for Kumar. Commerce's determination to ignore the factual record and instead assign Kumar a rate based on total AFA was not supported by substantial evidence and should be reversed by this Court.

## V.   CONCLUSION

For the foregoing reasons, Commerce's decision should be remanded with directions to reverse Commerce's application of total AFA and to calculate Kumar's dumping margin from the existing record.

Respectfully submitted,

/s/ *Lizbeth R. Levinson*
Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20005
 Tel:    (202) 794-1186
 Fax    (202) 461-3102
 Email:  llevinson@foxrothschild.com

*Counsel to Kumar Industries*

Dated: July 28, 2022

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 4,196 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Lizbeth R. Levinson*

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
 Tel:   202-794-1183
 Fax:  202-461-3102

July 28, 2022

136357517.1