**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | |
|---|---|
| KUMAR INDUSTRIES,<br><br>   Plaintiff,<br><br>   v.<br><br>THE UNITED STATES,<br><br>   Defendant. | Court No. 21-00622 |

**PLAINTIFF'S REPLY BRIEF**

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, N.W.
Suite 500
Washington, DC 20006
Tel: (202) 794-1182
Email: llevinson@foxrothschild.com

*Counsel for Plaintiff Kumar Industries*

November 18, 2022

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS NOT JUSTIFIED ........................................................................................................... 1

    A. Commerce Has Not Sufficiently Identified Missing or Withheld Information Necessary To Calculate A Dumping Margin ................................................. 2

    B. Commerce Has Not Sufficiently Justified the Application of Adverse Facts Available ........................................................................................................ 6

III. CONCLUSION ................................................................................................................ 9

WORD COUNT CERTIFICATE OF COMPLIANCE .............................................................. 10

140128323.1

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

19 U.S.C. § 1677e(b) ...........................................................................................................6

19 U.S.C. § 1677e(b)(a)(1)-(2) ...........................................................................................2

19 U.S.C §1677m(d) ...........................................................................................................7

**Cases**

*BlueScope Steel Ltd. v. United States*,
  548 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) ................................................................7

*BMW of N. Am. LLC v. United States*,
  926 F.3d 1291 (Fed. Cir. 2019) ....................................................................................8

*Hitachi Energy USA Inc. v. United States*,
  34 F.4th 1375 (Fed. Cir. 2022) .....................................................................................6

*Jinan Yipin Corp. v. United States*,
  526 F. Supp. 2d 1347 (Ct. Int'l Trade 2007) ................................................................3

*Jindal Poly Films v. United States*,
  365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ................................................................8

*Zhejiang Duniln Hetian Metal Co. v. United States*,
  652 F.3d 1333 (Fed. Cir. 2011) ....................................................................................8

**Other Authorities**

19 C.F.R. § 351.102(b)(3) ...................................................................................................3

H.R. Rep. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 .................8

H.R. Rep. No. 103-826, vol. 1, reprinted in 1994 U.S.C.C.A.N. ......................................9

**I.       INTRODUCTION**

Plaintiff Kumar Industries, India ("Plaintiff" or "Kumar") respectfully submits this reply brief to respond to the Defendant United States' ("Defendant" or the "Government") Opposition to Plaintiff's 56.2 Motion for Judgment on the Agency Record ("Defendant's Brief") filed on September 26, 2022. The reply brief is timely in accordance with the Scheduling Order governing the briefing in this case.

For the reasons stated herein, Defendant's arguments lack merit, and the Plaintiff's 56.2 Motion for Judgment on the Agency Record should be granted and Commerce's final results be remanded for reconsideration in accordance with the Court's decision.

**II.      COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS NOT JUSTIFIED**

Commerce's final results and decision to apply total adverse facts available ("AFA") are not supported by substantial evidence on the administrative record and are otherwise not in accordance with law. Although Commerce determined that necessary information was missing from the record and that Kumar withheld information during the proceeding, Commerce did not identify a single document or record that was actually missing in order to justify the application of adverse inferences. To the contrary, the record establishes that Kumar timely submitted its initial and supplemental questionnaire responses containing verifiable information. Commerce elected not to verify the information submitted by Kumar pertaining to its purported affiliations, and Commerce further failed to issue supplemental questionnaires to clarify any misunderstanding about Kumar's affiliation status. Instead of calculating an accurate dumping margin in accordance with its overriding mandate, Commerce simply concluded that Kumar was not forthcoming in responding to the questions about its affiliations, and as a result applied total AFA. As addressed in this reply brief, the statute does not permit Commerce to apply total AFA to disregard Kumar's

1

reported sales and cost data without an explanation as to what necessary information was missing from the record or was withheld by Kumar to justify its AFA decision.

Finally, given that there was adequate time in the administrative review for Commerce to clarify any questions with respect to Kumar's affiliations or any other issues, Commerce should have issued supplemental questionnaires to permit Kumar an opportunity to resolve any deficiencies. Commerce's administration of this review unfairly denied Kumar reasonable opportunity to address the issues that led to Commerce's application of AFA. And Commerce failed to adequately explain the basis for its decision with explicit citations to the record and in sufficient detail to support its AFA decision. Kumar acted to the best of its ability, and accurately provided extensive information regarding the status of any affiliations with Companies A and B on every occasion in the form and manner requested by Commerce. Thus, there was no basis for Commerce to determine that AFA was warranted on this administrative record, and there were no gaps or deficiencies in the record that prevented Commerce from calculating a dumping margin.

### A. Commerce Has Not Sufficiently Identified Missing or Withheld Information Necessary To Calculate A Dumping Margin

Defendant acknowledges that Commerce's sole decision to apply AFA to Kumar was based on a purported failure to "provide necessary information concerning its affiliation status with Companies A and B…" Defendant's Brief at 10.  While the antidumping statute permits Commerce to apply "facts otherwise available," Commerce is permitted to do so only if: (1) necessary information is not available on the record, or (2) an interested party (A) withholds information that has been requested, (B) fails to provide information by the deadlines established, or in the form and manner requested by Commerce, (C) significantly impedes a proceeding, or (D) provides information that cannot be verified. *See* 19 U.S.C. § 1677e(b)(a)(1)-(2). Defendant alleges that "Kumar did not provide reliable information as to whether it was affiliated with

- 2 -

Companies A and B, necessary information was not available on the record, Kumar withheld requested information, and Kumar thereby significantly impeded the administrative review." Defendant's Brief at 11.  Critically, however, Defendant does not identify with any specificity the requested necessary information that Commerce found to be missing from the record or withheld by Kumar that prevented it from calculating a dumping margin.

Defendant states that Kumar initially did not acknowledge any affiliations with Companies A and B, and that the company maintained it was not affiliated with those entities.  Defendant cites instances where Kumar reported that it did not make sales or purchases to affiliates and characterized Companies A and B as unaffiliated entities in its questionnaire responses. *See* Defendant's Brief at 11-12.  Defendant considers Kumar's position on the legal question of its affiliations as being inconsistent and discrepant with factual information submitted during the course of the administrative review.  As an initial matter, however, Kumar's position that it was not affiliated with Company's A and B during the period of review is a legal conclusion or position that Kumar was entitled to argue based on the retirement deeds "evidencing the Kumar partners' retirement from both Companies A and B." Defendant's Brief at 12.  The determination of whether a respondent is affiliated with another entity is, in fact, a legal conclusion. *See Jinan Yipin Corp. v. United States*, 526 F. Supp. 2d 1347, 1357 (Ct. Int'l Trade 2007) (explaining that affiliation is a legal conclusion). Yet, Defendant attempts to characterize Kumar's position on this legal question as a misrepresentation of fact, upon which it relies to indict Kumar's reporting of information during the proceeding, and which ultimately forms the basis of Commerce's AFA determination. However, Kumar was entitled to take a position on this legal question that it was not affiliated with Companies A and B, based upon the definition provided in the Glossary of terms at Appendix I of the initial questionnaire and in accordance with 19 C.F.R. § 351.102(b)(3).

Indeed, Kumar consistently maintained that it was not affiliated with Companies A and B during the period of review, but continued to provide requested information about the nature of previous affiliations as requested by Commerce. In other words, Kumar's position that it was not affiliated with Companies A and B during the period of review has no bearing on whether the company withheld information from Commerce during the administrative review, and Kumar certainly could not have impeded the review by taking this position on a legal question.

Defendant acknowledges that when Commerce directly asked about Companies A and B in a supplemental questionnaire, Kumar disclosed that "its partners had sold Company A before the beginning of the period of review, and that it previously jointly owned Company B but had sold it in 2013." Defendant's Brief at 12. In fact, each time that Commerce requested specific records or information pertaining to Kumar's previous affiliations with Companies A and B, Kumar timely provided the information. For instance, when Commerce requested information on whether the partners in Kumar received income from Companies A and B during the period of review, Kumar provided the tax returns of its partners and asserted that its partners did not receive income from Companies A and B during the POR. *See* Defendant's Brief at 12; *see also* Preliminary Decision Memorandum ("PDM") at 6; Public Record ("PR") 2. Because the tax returns indicated some evidence of income from Companies A and B, Commerce issued follow-up questions concerning the apparent receipt of income from Companies A and B. *Id.* Kumar explained that the income received was "in fact interest on the loans and payment," and that the partner's tax consultant erroneously classified the interest income from advance and capital in Companies A and B as "income from operation of the partnership in the draft income tax computation for the years 2019-2020 and 2020-2021." PDM at 6; PR 2. As discussed in Plaintiff's 56.2 brief, Kumar also provided the final official documents filed with the Indian tax authorities

to corroborate its claims of non-receipt of any business income by its partner apart from some interest. Plaintiff's 56.2 Brief at 11-12.

As a result of this explanation, Commerce found that "Kumar withheld from its earlier responses the information repeatedly requested – whether Kumar is affiliated with Companies A and B through this partner and whether this partner received income from Company A or B." PDM at 6; PR 2. As discussed above, Kumar's position on the legal conclusion that it was not affiliated with Companies A or B does not amount to a withholding of information as the company had every right to argue that legal position based on the retirement deeds it submitted on the record. Commerce also wrongly found that Kumar withheld information pertaining to income received from Companies A and B, when in fact, the company submitted the tax returns which would show any income received. Kumar also provided a clarifying explanation regarding the tax consultant's incorrect description of the income.

Commerce cannot find that a respondent withheld information, which it actually did provide, and then ultimately use that information to reach its decision. In other words, Commerce cannot assert on the one hand that Kumar withheld information pertaining to whether its partner received income from Companies A and B, and on the other hand, use information (i.e. the tax return) to find that there was evidence the partner received income.  It is simply illogical to penalize a company for withholding or refusing to give information, and then use the information that was submitted by the respondent to support a finding that it withheld the information. The Court should not countenance Commerce's circular and unsupported reasoning.

Defendant argued further that Kumar's explanation regarding the characterization of the income on the tax returns was "dubious" which "left several questions unanswered." Defendant's Brief 14.  Importantly, however, those questions remained unanswered because they were unasked

in the first instance. Had Commerce asked any questions necessary to obtain clarification on the issue, Kumar would have provided the information and responses as it consistently did throughout the proceeding.  The statute does not permit Commerce to penalize a respondent for withholding unrequested information, or for not answering unasked questions.  While the burden rests with the respondent to create an adequate record, respondents are not required to guess what Commerce needs and answer unlimited unasked questions. Commerce's Final Determination simply lacks sufficient reasoning or explanation of the information that is missing from the record or that Kumar withheld information.  Accordingly, Commerce's decision that necessary information was missing from the record, that Kumar withheld requested information, and Kumar significantly impeded the review is wholly unsupported by substantial evidence.

**B.     Commerce Has Not Sufficiently Justified the Application of Adverse Facts Available**

Defendant similarly continues to inadequately justify the application of adverse facts available. AFA is appropriate pursuant to 19 U.S.C. § 1677e(b) only when Commerce finds that the respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information…"  Defendant still has not identified a single document or specific request for information that Kumar failed to provide in support of Commerce's AFA determination.

Commerce must sufficiently detail and justify its AFA determination by identifying how the respondent failed to cooperate by not complying with a specific request for information. Defendant posits that "Kumar repeatedly denied and/or failed to submit documents clearly explaining its affiliation status with respect to companies A and B." Defendant's Brief at 17.  First, Kumar's denial of its affiliations with Companies A and B does not amount to a failure to "comply with a request for information." Second, Defendant does not identify a single, specific instance wherein Commerce requested information and Kumar simply did not comply with the request,

- 6 -

thereby resulting in a gap in the record. *See, e.g. Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1385 (Fed. Cir. 2022) (holding that Commerce was not entitled to apply adverse inferences where there "was no refusal to provide the information whose absence created a gap that required the use of facts available.").

Had there been a specific request for information with which Kumar failed to comply, Commerce must at a minimum (i) inform the party of any such deficiency (i.e., provide "notice' of deficiency) and (ii) an opportunity to cure the deficiency, 19 U.S.C §1677m(d). Because Commerce did not identify a single specific request for information with which Kumar failed to comply, there was no subsequent notice of the deficiency, and thus no opportunity for Kumar to rectify the noncompliance. *See, e.g. BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351, 1364 (Ct. Int'l Trade 2021) (holding that Commerce improperly applied total AFA where it did not request remediation of deficiencies through the issuance of a supplemental questionnaire nor did it request further documentation). The Court has found that Commerce's "wait{ing} to disregard" information on the record and "to replace *all* . . . information with facts available – until it was too late for {respondent} to remediate any deficiency in its reporting" was unlawful. *Id.* at 1365. Furthermore, the Court specifically took issue with Commerce's failure to give a "reason as to why it would have been impracticable to ask further questions . . . , or to request additional documentation." *Id.*

In sum, Kumar cooperated in all facets of the review, and provided responses to Commerce's requests for information in the manner and form requested. Commerce has failed to identify any gaps in the record resulting from Kumar's noncompliance with a specific information request. Commerce has further failed to identify specific deficiencies created by Kumar's

purported noncompliance with an information request that prevented the agency from calculating an appropriate antidumping margin.

The application of adverse facts available is therefore not supported by the administrative record as Commerce has not identified any gaps on the record. Commerce is permitted to fill gaps in the record with adverse facts available, only if such gaps exist in the first instance. Commerce's failure to identify any gaps resulting from Kumar's noncompliance with a specific request for information renders application of adverse facts available unsupported on the record.  *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act (SAA), H.R. Rep. No. 103-316, vol. 1, at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("Commerce uses the facts available to fill gaps in the record . . ."; *Zhejiang Duniln Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("{I}t is clear that Commerce can only use facts otherwise available to fill a gap in the record.").

Even, assuming *arguendo*, that Commerce properly identified gaps in the record resulting from Kumar's noncompliance with an information request, the statute still requires Commerce to use as much of the respondent's data as it can to achieve the statutory mandate to accurately calculate the dumping margin.  As this Court stated in *Jindal Poly Films v. United States*, 365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019):

> Commerce may not decline to consider information that is necessary to the determination but does not meet all the applicable requirements when the information is timely submitted; the information can be verified; the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination.

Furthermore, the "AFA rate is intended 'to be a *reasonably accurate estimate* of the respondent's actual rate, albeit with *some built-in increase* intended as a deterrent to non-compliance.'" *BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) at 1300

(quoting *De Cecco,* 216 F.3d at 1032) (emphasis added). Indeed, the Statement of Administrative Action provides that any determination based on AFA must be based on "all evidence of record, weighing the record evidence to determine that which is most probative of the issue under consideration." SAA, H.R. Rep. No. 103-826, vol. 1, at 869, reprinted in 1994 U.S.C.C.A.N. at 41. Here, Commerce has not attempted to corroborate the AFA rate, and has simply disregarded entirely Kumar's reported U.S. sales, home market sales, and cost data, all of which were timely submitted, verifiable, and necessary to the calculation of the antidumping margin.

### III.  CONCLUSION

For the foregoing reasons, Commerce's decision should be remanded with directions to reverse Commerce's application of total AFA and to calculate Kumar's dumping margin based upon the existing record.

Respectfully submitted,

/s/ Lizbeth R. Levinson

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

**FOX ROTHSCHILD LLP**
2020 K Street, NW
Suite 500
Washington, DC 20006
Tel: 202-794-1183
Fax: 202-461-3102

November 18, 2022

140128323.1

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,707 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Lizbeth R. Levinson

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell
FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC 20006
Tel: 202-794-1183
Fax: 202-461-3102

November 18, 2022